FILED
JUN 1 2 2008
[signature]
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 07-30091-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ADOPTING |
| vs. | ) | MAGISTRATE JUDGE'S |
| | ) | REPORT AND |
| PHILLIP J. LITTLE HOOP, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

Defendant, Phillip J. Little Hoop, is charged with one count of sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2243(a) and 2246(2)(A). He moves to suppress the statements he made to law enforcement officers on November 17, 2006, and September 21, 2007.

The court referred the motion to suppress to Magistrate Judge Mark A. Moreno pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Moreno recommends that this court deny Little Hoop's motion to suppress his statements. Little Hoop objects to the report and recommendation of Magistrate Judge Moreno. The government has not objected to the report and recommendation.

**STANDARD OF REVIEW**

The court must make a de novo review "of those portions of the [Magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also United States v. Lothridge, 324 F.3d 599 (8th Cir. 2003); Jones v. Pillow, 47 F.3d 251, 253 (8th Cir. 1995). 28 U.S.C. § 636(b)(1) requires that when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; see also Fed. R. Civ. P. 72 (b). After a de novo review of the magistrate judge's report and recommendation and a review of the record, the court accepts the report and recommendation of the magistrate judge as supplemented herein.

**DISCUSSION**

**I.   Voluntariness**

Voluntariness is the standard for the admissibility of confessions. See Brown v. Mississippi, 297 U.S. 278, 279, 286, 56 S. Ct. 461, 80 L. Ed. 682 (1936). In determining whether a statement is voluntary, the court must consider the totality of the circumstances. United States v. Bordeaux, 980 F.2d 534, 538 (8th Cir. 1992). In light of the totality of the circumstances, a statement is not voluntary if "pressures exerted upon the suspect have

2

overborne his will." United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990). The two factors that a court must consider when applying the "overborne will" doctrine are "the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." Id.

A confession is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Conversely, "[a] statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Hyles, 479 F.3d 958, 966 (8th Cir. 2007). "[C]oercive policy activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004).

### A. November 17, 2006, Statements

On November 17, 2006, Agent Barrera, a special agent for the Rosebud Sioux Indian Tribe, interviewed Little Hoop. Docket 59, at 11. At that time, Little Hoop was in the Rosebud tribal jail on the basis of an old warrant. Id. at

12. Agent Barrera testified that the jailer brought Little Hoop into his office, at which time he explained to Little Hoop what was happening, advised Little Hoop that he wanted to talk to him, and read Little Hoop his Miranda rights. Id. at 14. Agent Barrera also introduced himself to Little Hoop and let Little Hoop know the purpose of the interview, namely, the circumstances of his contact with J.G. Little Hoop initially denied the sexual contact allegations, but after a series of questions, he finally admitted that he had sexual contact with J.G. Id. at 18.

Agent Barrera also testified that during the interview, he did not make any threats to Little Hoop and was not carrying a firearm. Id. at 23. Agent Barrera read the statutes that Little Hoop allegedly violated and advised Little Hoop of the possible sentences. He told Little Hoop that one of the possible sentences that might be imposed on him was life in prison. But he did not give Little Hoop legal advice, did not tell him that he would get a better sentence, and did not tell him that he would feel better if he told the truth. Id. at 37-39. Agent Barrera kept asking Little Hoop why he was refusing to take a DNA test to prove his innocence. Agent Barrera further testified that he might have been a little aggressive, by asking Little Hoop approximately twenty times why he was denying the allegations. Id. at 43-45.

Agent Barrera testified that after Little Hoop admitted having sexual contact with J.G., Little Hoop started to talk about a car accident he had been

4

in that had almost killed him and about his family. Id. at 18-19. Little Hoop also mentioned to Agent Barrera that he was applying for Supplemental Security Income benefits (SSI benefits) as a result of the accident. Little Hoop asked about obtaining the accident report and Agent Barrera told Little Hoop that the records division was the proper department for that request. Id. at 33.

Little Hoop argues that his statements to Agent Barrera were involuntary because Agent Barrera advised him of the possible penalties of his alleged behavior, he had residual effects of dementia or borderline intellectual functioning, and Agent Barrera continuously questioned him for thirty minutes about why he refused to take a DNA test to prove his innocence.

There is a dispute in regards to when Agent Barrera advised Little Hoop of the potential penalties. Regardless of when Agent Barrera advised Little Hoop of the potential penalties, however, such conduct does not make Little Hoop's statement involuntary. In fact, several courts, including the Eighth Circuit, have determined that statements about penalties do not necessarily render a defendant's statements involuntary. See, e.g., United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (stating the police's "statements that [the defendant] could receive life in prison . . . were not calculated to force him to confess") and United States v. Nash, 910 F.2d 749, 753 (11th Cir. 1990) (stating that "telling the [defendant] in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the

5

truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the government"). Thus, under the circumstances of this case, the court finds that Agent Barrera's statements to Little Hoop about potential penalties did not coerce Little Hoop into making statements about his sexual contact with J.G.

Likewise, Little Hoop's mental state at the time the statements were made, including his dementia and low IQ, did not make his statements involuntary. "A defendant's mental condition alone is not enough to render a confession constitutionally involuntary; there must be coercive police activity." LaRette v. Delo, 44 F.3d 681, 688-89 (8th Cir. 1995). See also Colorado v. Connelly, 479 U.S. 157, 165-67 (1986). Although the defendant's ability to resist interrogation pressures is relevant to the voluntariness inquiry, his mental condition alone cannot make the statements involuntary. Jenner v. Smith, 982 F.2d 329, 333 (8th Cir. 1993). A statement is not involuntary unless " 'the police extorted it from the accused by means of coercive activity.' " Id. For example, in United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998), a case involving claims of involuntariness due to low IQ, PCP intoxication, and mental illness, the Eighth Circuit denied the defendant's motion to suppress his confession, because the fact that the defendant was cooperative, reviewed and initialed each admonition of the waiver form, agreed to answer questions, and gave accurate information proved that the statements were voluntary. Like

in Turner, here Little Hoop may have dementia and a low IQ, but he was cooperative, agreed to answer questions, and gave accurate background information about himself. Additionally, there is no evidence to suggest that Agent Barrera was acting with the requisite degree of coercion to render Little Hoop's statements involuntary.

Further, the fact that Agent Barrera continuously questioned Little Hoop about sexual contact with J.G. does not make Little Hoop's statements involuntary. The United States Supreme Court has recognized that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714. Accordingly, under the circumstances of this case, the continuous questioning does not necessitate a finding that Little Hoop's statements were involuntary.

### B.  September 21, 2007, Statements

Special Agent Oscar Ramirez interviewed Little Hoop on September 21, 2007. A tribal criminal officer, Agent Ken Fisher, accompanied Special Agent Ramirez during the interview. At the time Special Agent Ramirez made contact with Little Hoop, Little Hoop was incarcerated in a jail in Valentine, Nebraska. At the beginning of the interview, Special Agent Ramirez introduced himself

7

and Agent Fisher to Little Hoop, advised Little Hoop of the nature of the interview, obtained biographical information from Little Hoop, and advised Little Hoop of his rights. Docket 59, at 50-52.

Special Agent Ramirez testified that the focus of the interview was not about Little Hoop's involvement, but rather about who could have had sexual contact with J.G. other than Little Hoop. Id. at 71. Special Agent Ramirez asked Little Hoop if he had any mental problems he should know about that might stop him or might interfere with the interview. Id. at 72. During the interview, Little Hoop never indicated that he wanted to remain silent, that he wanted an attorney present during questioning, or that he wanted the questioning to stop. Special Agent Ramirez never made threats to Little Hoop. Id. at 63. Little Hoop was cooperative and confirmed that he had sex with J.G. Id. at 58, 66. Little Hoop also talked to Special Agent Ramirez in great detail about his life, the Valentine jail, and other subjects, but he did not mention his attempt to obtain SSI benefits. Id. at 65-66.

Little Hoop argues that his statements to Special Agent Ramirez should be suppressed because he was suffering from dementia, had lost cognitive functioning, had a full scale IQ of 71, and drew a house diagram like a small child. As noted above, Little Hoop's mental state when he made the statements does not require a finding of involuntariness. "Personal characteristics of the defendant are constitutionally irrelevant absent proof of 'coercion brought to

bear on the defendant by the State.'" Sidebottom v. Delo, 46 F.3d 744, 758 (8th Cir. 1995). No evidence was presented that Agent Ramirez acted with coercion that rose to the level necessary to render Little Hoop's statements involuntary and, therefore, his statements to Agent Ramirez were voluntary notwithstanding his mental condition.

**II.    Validity of Miranda Rights Waiver**

A criminal suspect may waive his constitutional rights protected by Miranda v. Arizona. 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). But the waiver must be voluntary, knowing, and intelligent, that is it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and the suspect must have "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994). The " 'totality of circumstances surrounding the interrogation' " guide the determination of whether a waiver was voluntary, knowing, and intelligent. Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). Here, because the court has found that Little Hoop was not intimidated, coerced, or deceived, the question is whether he sufficiently understood the nature and consequences of his waivers.

Little Hoop argues that he did not knowingly and intelligently waive his Miranda rights because Dr. Dewey Ertz concluded that he was not competent

9

when he waived his Miranda rights. More specifically, Little Hoop argues that the fact that Dr. Ertz opined that he did not have an adequate understanding of his Miranda warnings at the time he made statements to law enforcement evidences that his Miranda waivers were not knowing and intelligent.

### A. November 17, 2006, Statements

Based on the totality of the circumstances, the court finds that Little Hoop made a knowing and intelligent waiver of his Miranda rights before his November 17, 2006, statements to Agent Barrera. Agent Barrera advised Little Hoop of his rights based upon an advice of rights form. Little Hoop initialed each right enumerated in the advice of rights form as Agent Barrera read the rights and Little Hoop ultimately signed the form, indicating he understood his rights and that he was waiving them. Docket 59, at 14-15. After he completed the form, Little Hoop told Agent Barrera that he was willing to talk to him. Id. at 17. During the interview, Little Hoop never indicated that he wanted to remain silent, that he wished to have an attorney present prior to any additional questioning, or that he wanted the questioning to stop. Id. at 22-23.

The fact that Little Hoop was suffering from dementia and possessed a low IQ does not necessarily mean that Little Hoop did not knowingly and intelligently waive his Miranda rights. To this end, courts have found several instances where defendants, despite their low IQs, have waived their rights

knowingly and intelligently.  See, e.g., Turner, 157 F.3d at 555 (holding that a defendant's borderline IQ did not prevent a knowing and intelligent waiver); Rice v. Cooper, 148 F.3d 747, 749, 750-51 (7th Cir. 1998) (holding that a mildly retarded defendant gave a valid waiver because police had no reason to suspect that he did not understand the warnings); and Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995) (finding that a defendant's waiver of his Miranda rights was knowing and intelligent despite the fact that the defendant possessed an IQ of only 68 because he was 24 years old and had previously had numerous experiences with law enforcement and Miranda warnings). Further, the fact that Agent Barrera informed Little Hoop of his constitutional rights and that Little Hoop signed a waiver of rights form that Agent Barrera explained in detail support a finding that his low intelligence did not preclude his understanding the nature and significance of his constitutional rights.  See Conner v. Auger, 595 F.2d 407, 411 (8th Cir. 1979) (finding that a defendant's waiver of his rights was knowing and voluntarily despite his low intelligence because the police officers informed the defendant of his Miranda rights and the defendant signed a waiver of rights form).

Moreover, Dr. Ertz's testimony that Little Hoop did not understand his constitutional rights is not particularly convincing when viewed in the light of

11

his testimony regarding Little Hoop's ability to understand legal concepts.[1] In fact, Dr. Ertz testified that Little Hoop has an adequate understanding of basic legal concepts and presents the necessary knowledge and skills to assist in his legal defense. Dr. Ertz opined that Little Hoop understands what he is charged with and understands the range of possible defenses he could use for those charges at a trial. Dr. Ertz also testified these concepts are not more complicated than concepts like the right to counsel or the right to remain silent. Docket 59, at 117. Dr. Ertz recognized that an individual, like Little Hoop, who had been through the criminal justice system on multiple occasions has a better understanding of the system than an individual who has never been through it. Id. at 122. These observations, coupled with the fact that Agent Barrera explained the advice of rights form to Little Hoop and Little Hoop did not indicate that he did not understand those rights, indicate that Little Hoop was capable of understanding his Miranda rights and knowingly and intelligently waived those rights.

### B.   September 21, 2007, Statements

Similarly, the court finds that Little Hoop knowingly and intelligently waived his Miranda rights prior to making incriminating statements to Special

---

[1] The court also notes that the magistrate judge determined the reliability of Dr. Ertz's report and testimony was questionable. Docket 60, at 8. Because the magistrate judge was able to observe Dr. Ertz testify, he is in a better position to opine on Dr. Ertz's credibility. As such, the court gives deference to the magistrate judge's conclusions regarding Dr. Ertz's credibility.

Agent Ramirez. Before the interview began, Special Agent Ramirez read verbatim every sentence of the advice of rights form to Little Hoop. After reading each sentence, Special Agent Ramirez looked at Little Hoop and asked him if he understood. Special Agent Ramirez informed Little Hoop that he had the right to stop answering questions at any time during the interview and that the interview was completely voluntary. Docket 59, at 55-56. At no time during the interview did Little Hoop indicate that he wanted to remain silent, that he wanted an attorney present during questioning, or that he wanted the questioning to stop. Id. at 63.

As discussed above, dementia or low intelligence level does not require a finding that Little Hoop did not knowingly and intelligently waive his rights. Rather, when viewed in the totality of the circumstances, courts have found that such individuals have knowingly and intelligently waived their rights. Significantly, Little Hoop was able to provide Special Agent Ramirez with his name, date of birth, social security number, address, and last grade of education. Little Hoop was also able to inform Special Agent Ramirez that he was in jail because he had previously been arrested in relation to an event that was not related to the reservation. Id. at 53-54. Additionally, Dr. Ertz's conclusion that Little Hoop did not understand his constitutional rights is unpersuasive because he testified that the fact that Little Hoop was expressing concerns with respect to the conditions at the Valentine jail and complaining

about the treatment he was receiving there indicates that Little Hoop was aware and cognizant of his surroundings and what he was doing. Dr. Ertz also testified that after Little Hoop confessed, Little Hoop stated that he was sorry, which weighed in favor of a finding that Little Hoop acknowledged or realized what he had done and that such conduct was wrong. Id. at 129, 131.

Based on the foregoing, it is hereby

ORDERED that the court adopts the report and recommendation of the magistrate judge to deny defendant's motion to suppress (Docket 58), as supplemented herein, and defendant's motion (Docket 33) is therefore DENIED.

Dated June 11, 2008.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
CHIEF JUDGE